UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DYLAN C. BOWERS, <br> # 401703, <br><br> Plaintiff, <br><br> v. <br><br> JACGULINE POWER, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> )    No. 3:17-cv-01599 <br> )    CHIEF JUDGE CRENSHAW <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Dylan C. Bowers, an inmate of the Metro-Davidson County Detention Facility in Nashville, Tennessee, brings this pro se, in forma pauperis action under 42 U.S.C. § 1983 against Core Civic R-Dap Program Manager Jacguline Power, Core Civic Unit Manager Darryl Jones, Core Civic Correctional Officer Jacob Jarrail Lowe, Core Civic Head Warden Blair Lebach, and Core Civic, alleging violations of the Plaintiff's federal constitutional and civil rights. (Doc. No. 1). The Plaintiff also has filed a motion to amend his complaint (Doc. No. 6) and a motion for the appointment of counsel (Doc. No. 13).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I. Motion to Amend**

The Plaintiff has filed an amended complaint, which the Court construes as a motion to amend the complaint. (Doc. No. 6). Rule 15(a) (2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party,

1

bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. Brumbalough v. Camelot Care Ctrs., Inc., 427 F.3d 996, 1001 (6th Cir. 2005).

The proposed amendments to the complaint provide additional context for the claims raised in the original complaint. No new Defendants or claims are added. There appears to be no undue prejudice to the opposing party by permitting the Plaintiff to amend his complaint at this time; the Defendants have not been served. The Court therefore will grant the motion to amend and screen the original complaint, as informed by the Plaintiff's proposed amendments to the original complaint, pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## II. Motion for the Appointment of Counsel

The Plaintiff recently filed a motion requesting the appointment of counsel "to represent the Plaintiff in this matter, for discovery purposes as well as for the evidentiary hearing that this Honorable District Court might (and for which the Plaintiff prays that it does) order, for the interests of justice so require that such is ordered." (Doc. No. 13 at 4). He states that he is unable to afford an attorney, he needs an attorney to assist him with an evidentiary hearing and discovery in this case, and his imprisonment limits his ability to litigate effectively because the facility in which the Plaintiff is presently incarcerated "does not provide for direct access to legal materials." (Id. at 2-3). According to the Plaintiff, in lieu of direct access to legal materials, inmates at the Metro-Davidson County Detention Facility have access to contractual services provided by a "CCA" attorney; however, "the CCA Contractual Attorney is not authorized to provide meaningful and/or expert services to the Plaintiff, thus warranting and necessitating the appointment of counsel." (Id. at 2).

The Plaintiff cites to a "Confidential Request for Attorney Conference specifying the services provided by the CCA Contractual Attorney, Form 14-8A (Revised 4/1/98)" but no such form is attached to his motion. (Id. at 2-3 n.1).

The Supreme Court has held that "an indigent's right to appointed counsel . . . exists only where the litigant may lose his physical liberty if he loses the litigation." Lassiter v. Dep't of Social Servs., 452 U.S. 18, 25 (1981). Thus, unlike criminal proceedings, there is no constitutional right to an appointed counsel in a civil action, such as this action. Willett v. Wells, 469 F. Supp. 748, 751 (E.D. Tenn. 1977), aff'd, 595 F.2d 1227 (6th Cir. 1979); Williamson v. Autorama, Inc., No. 91-5759, 947 F.2d 947 (6th Cir. 1991)(citing Willett favorably). The appointment of counsel for a civil litigant is a matter within the discretion of the district court and will occur only under exceptional circumstances. Lavado v. Keohane, 992 F.2d 601, 604-05 (6th Cir. 1993).

The Plaintiff's circumstances as described are typical to most prisoners. See Murray v. Giarratano, 492 U.S. 1, 7 (1989) (pro se litigant); Richmond v. Settles, 450 Fed. App'x 448, 452-53 (6th Cir. 2011) (indigent litigant); Debow v. Bell, No. 3:10-cv-1003, 2010 WL 5211611, at *1 (M.D. Tenn. Dec. 15, 2010) (inmates are typically indigent and untrained, pro se litigants). However, the Plaintiff's contention that inmates at his facility are not provided access to legal materials gives the Court pause. The Plaintiff specifically asks for the appointment of counsel with respect to discovery and an evidentiary hearing in this case. At this time, discovery has not commenced and no evidentiary hearing is scheduled. The Plaintiff has filed a complaint (Doc. No. 1), an application to proceed in forma pauperis (Doc. No. 7), an amended complaint (Doc. No. 6), a motion for the appointment of counsel (Doc. No. 13), and seven letters to the Court (Doc. Nos. 3, 5, 8, 9, 10, 11, 12); he is effectively representing his own interests to date. Therefore, at this time the Court will

3

deny the Plaintiff's motion for the appointment of counsel without prejudice to the Plaintiff's ability to refile the motion at the appropriate time. If the Plaintiff refiles his motion, he should provide the Court with more information regarding the lack of inmate access to legal materials as well as the Form 14-8A referenced in his instant motion to appoint counsel.

### III. PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). Id. § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual

allegations as true." Tackett v. M & G Polymers, USA, LLC, 561F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**IV. Section 1983 Standard**

Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

**V. Alleged Facts**

The complaint as amended alleges that the Defendants have retaliated, and are still retaliating, against the Plaintiff for filing inmate grievances at the Metro-Davidson County Detention Facility. According to the complaint, the retaliation consists of placing the Plaintiff in a segregation "torture cell" for two days with no access to the telephone or the courts as well as being "physically and sexually abused." (Docket No. 1 at 5, 9). According to the complaint, the cell had blood and feces smeared on the walls, no bed or bedding, no toilet paper, no water to wash hands, sewage leaking from the pipe under the toilet, and a three-inch crack in the wall of the foundation which

allowed the outside air to enter. (Id. at 5).

The complaint also alleges that Warden Leibach told the Plaintiff "in a threatening manner" to "stop filing informals on [his] staff and stop harassing and threatening to sue my staff and if you don't I'll hide you away myself . . . ." (Id.) The complaint further alleges that Plaintiff was ordered by a state court judge to participate in the R-Dap program but that the Defendants removed the Plaintiff from the program in retaliation for the grievances he has filed and continues to file. (Id. at 9).

Finally, the complaint alleges that, on November 28, 2017, the Plaintiff was brutally assaulted by an unidentified assailant. According to the complaint, the assault could have been stopped by Lowe, the officer assigned to the Plaintiff's unit, but Lowe refused to intervene. (Id. at 5).

## VI. Analysis

### A. Retaliation claims

The complaint alleges that the Defendants retaliated against the Plaintiff because he filed inmate grievances. A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999). To establish a prima facie case of retaliation within the context of § 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. Id. at 394-99. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing

6

other than de minimis harm resulting from it. See Ingraham v. Wright, 430 U.S. 651, 674 (1977); Thaddeus-X, 175 F.3d at 396. Filing grievances through an inmate grievance process is protected conduct. See Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000). First, the complaint specifically alleges that the Defendants retaliated against the Plaintiff for filing grievances by placing him in segregation or a restricted housing unit. However, even if this allegation is true, inmates do not have a liberty interest in a particular security classification or in freedom from segregation. Miller v. Campbell, 108 F. Supp.2d 960, 963 (W.D. Tenn. 2000)(citations omitted). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. See Meachum v. Fano, 427 U.S. 215, 225 (1976). In Sandin v. Conner, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the Sandin Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 486-87; see also Jones v. Baker, 155 F.3d 810, 812 (6th Cir. 1998); Rimmer-Bey v. Brown, 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." Hewitt v. Helms, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." Joseph v. Curtin, 410 Fed.Appx. 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." Harden–Bey v. Rutter, 524 F.3d 789, 794 (6th Cir. 2008). In Sandin, the Supreme Court

concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. Sandin, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for a relatively short period of time does not require the protections of due process. Rimmer-Bey, 62 F.3d at 790-91; see Joseph v. Curtin, 410 Fed.Appx. 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit also has held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. See, e.g., Baker, 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); Mackey v. Dyke, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). But cf. Selby v. Caruso, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); Harden-Bey, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); Harris v. Caruso, 465 Fed.Appx. 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest). Based on these cases, the Court finds that the Plaintiff's two day period of segregation does not constitute "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 486-87. The complaint does not allege that the two days he served in segregation impacted the duration of the Plaintiff's sentence.

    The complaint also alleges that the Defendants retaliated against the Plaintiff by removing him from a court-ordered R-Dap program. However, prisoners have no constitutionally cognizable right to participate in rehabilitative or educational programs. See Rhodes v. Chapman, 452 U.S. 337,

348 (1981); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Canterino v. Wilson, 869 F.2d 948, 952-54 (6th Cir. 1989); Kenner v. Martin, 648 F.2d 1080, 1081 (6th Cir. 1981)(per curiam); Carter v. Corrs. Corp. of Am., No. 98-6336, 1999 WL 427352, at *1 (6th Cir. June 15, 1999). Thus, even assuming that the Defendants in fact removed the Plaintiff from the R-Dap program in retaliation for filing grievances, because the Plaintiff has no constitutional right to participate in the R-Dap program, the Plaintiff cannot establish that the alleged retaliatory action by the Defendants caused the Plaintiff more than de minimus harm. See Ingraham, 430 U.S. at 674; Thaddeus-X, 175 F.3d at 396. Thus, the complaint fails to state a retaliation claim based on the Plaintiff's removal from the R-Dap program.

Finally, the complaint alleges that Warden Leibach acting in his individual capacity threatened the Plaintiff that, if he did not stop filing grievances or "informals on [Leibach's] staff," Leibach was going to "hide [the Plaintiff] away." (Doc. No. 1 at 5). Attached to the Plaintiff's most recent letter to the Court is a memorandum to the Plaintiff from Bobby Aylward, "Quality Assurance Manager," signed by Leibach on January 8, 2018, notifying the Plaintiff that his grievance privileges have been temporarily suspended. (Doc. No. 12 at 2). The reason given for the suspension is that the Plaintiff filed ten grievances between the dates of December 28, 2017, and January 4, 2018, which Leibach deemed "excessive." (Id.) Indeed, an excerpt from an unidentified source cited in the letter states:

> If it is determined by the Warden/Administrator that an inmate/resident is deliberately abusing the grievance system through excessive filing of grievances and/or repeated refusal to follow procedures, the Warden/Administrator may suspend the filing of additional grievances until all pending grievances have been resolved. The Warden/Administrator will provide the inmate/resident with written documentation of the suspension.

(Id.)

9

Applying Thaddeus-X, 175 F.3d at 388, the Court finds that the complaint alleges that the Plaintiff has engaged in protected conduct by filing inmate grievances; that, by temporarily spending the Plaintiff's grievance privileges and by threatening to "hide" the Plaintiff if he continued to file grievances, Leibach has taken an adverse action against the Plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and the complaint alleges that Leibach's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. Id. at 394-99. In addition to alleging a retaliatory motive, the complaint alleges that Leibach's alleged discriminatory action was punitive and resulted in more than de minimis harm to the Plaintiff. See Ingraham, 430 U.S. at 674; Thaddeus-X, 175 F.3d at 396. Consequently, the Court finds that the allegations of the complaint against Warden Leibach state an actionable retaliation claim against Leibach in his individual capacity. It is unclear whether the Plaintiff ultimately will prevail on this claim, but the Court finds that further development of the claim is warranted, especially given the recent ban on the Plaintiff's grievance privileges.

### B. Cruel and unusual punishment claims

The complaint alleges that the cell in which the Plaintiff was placed for two days of segregation had blood and feces smeared on the walls; that the Plaintiff was not provided with any bedding, a bed, toilet paper, or water to wash his hands; that there was sewage leaking from the pipe under the toilet and a three-inch crack in the foundation which allowed outside air to enter the cell; and that the Plaintiff was "physically and sexually abused." (Doc. No. 1 at 5).

The Constitution does not protect a prisoner from unpleasant prison experiences. Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987). Nor does the Constitution mandate comfortable conditions of confinement. Rhodes v. Chapman, 452 U.S. 337, 101 S. Ct. 2400, 69 L.Ed.2d 59

(1981). However, the Eighth Amendment of the United States Constitution imposes an obligation to provide prisoners with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. Grubbs v. Bradley, 552 F. Supp. 1052, 1119-1124 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. Bellamy v. Bradley, 729 F.2d 416 (6th Cir. 1984).

Construed liberally, the pro se complaint alleges that the conditions of the Plaintiff's two day segregation constituted cruel and unusual punishment in violation of the Eighth Amendment. However, with respect to the conditions of his confinement, the Plaintiff has not claimed any injury or harm as a result of the alleged admittedly unpleasant conditions. Without an allegation of injury or harm, a plaintiff does not state a viable Eighth Amendment claim. See Moore v. Merchant, No. 5:13CV-P81-R, 2013 WL 6590395, at *4 (W.D. Ky. Dec. 16, 2013)(finding that, "[i]n any event, Merchant does not allege that he was subjected to any physical injury as a result of the actual conditions in the segregated housing unit, and 42 U.S.C. § 1997e(e) precludes any claim by a prisoner 'for mental or emotional injury suffered while in custody without a prior showing of physical injury.'"). Furthermore, "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey v. Wilson, 832 F. 2d 950, 954 (6th Cir. 1987).

Even if the Plaintiff was deprived of telephone usage during his two day segregation period (Doc. No. 1 at 5), the Sixth Circuit has held that, without a showing that basic human needs were not met, the denial of privileges as a result of segregation cannot establish an Eighth Amendment violation. See Evans v. Vinson, 427 Fed.Appx. 437, 443 (6th Cir. 2011); Harden-Bey v. Rutter, 524 F.3d 789, 795 (6th Cir. 2008). As the Supreme Court explained in Overton v. Bazzetta, 539 U.S.

126, 132, 123 S. Ct. 2162, 156 L.Ed.2d 162 (2003), a case where it rejected a First Amendment challenge to the prison's denial of visitation, some curtailment of the freedom to associate with family and friends is expected in the prison setting:

> The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. And, as our cases have established, freedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context.

Id. at 131 (internal citations omitted). Thus, the Court finds that the Plaintiff's allegations fail to demonstrate that the restrictions on telephone usage as described in the complaint unreasonably restricted or impaired the Plaintiff's constitutional right to communicate with family and friends. Consequently, the Court finds that the complaint fails to states colorable Eighth Amendment claims based on the allegations pertaining to the conditions of the Plaintiff's confinement in segregation. These claims will be dismissed. 28 U.S.C. § 1915A.

However, with respect to the Plaintiff's allegations of physical and sexual abuse, no prisoner is required to endure such experiences. Nonetheless, the complaint fails to provide any details regarding the alleged physical and sexual abuse. The complaint does not identify the alleged perpetrators of the abuse. A plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation. Miller v. Calhoun Cnty., 408 F.3d 803, 827 n.3 (6th Cir. 2005); Dunn v. Tennessee, 697 F.2d 121, 128 (6th Cir. 1982). The Court is not required "to conjure up [unpleaded] allegations." McDonald, 610 F.2d 16, 19. Without more, the Court cannot permit this claim to go forward. However, the Plaintiff will be permitted to amend his complaint in a timely manner for the purpose of fleshing out this particular claim, should he so desire.

### C. Access to courts claims

The complaint alleges that during the Plaintiff's two day segregation, he was denied access to the courts. (Doc. No. 1 at 5). The law is well settled that a prisoner has a First Amendment right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821-823 (1977). The right of access to the courts requires prison officials to ensure that inmates have access to the courts that is "adequate, effective and meaningful." Id. at 822. However, it is not enough for a plaintiff simply to claim that he was denied access to the courts. To state a claim on which relief may be granted, a plaintiff must show that a defendant's conduct in some way prejudiced the filing or prosecution of a legal matter. Walker, 771 F.2d at 932; Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996).

Here, the Plaintiff has not alleged that he has been prejudiced in filing this instant lawsuit or has suffered any litigation related detriment to either this case or another case. In fact, in this case alone the Plaintiff has submitted a complaint (Doc. No. 1), an application to proceed in forma pauperis (Doc. No. 7), an amended complaint (Doc. No. 6), a motion for the appointment of counsel (Doc. No. 13), and seven letters to the Court (Doc. Nos. 3, 5, 8, 9, 10, 11, 12). Because the Plaintiff has not shown that he sustained an actual injury in his efforts to litigate, any access to courts claim fails to state a claim upon which relief may be granted.

### D. Failure to protect or intervene claims

The Eighth Amendment to the United States Constitution requires officers to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–527, 104 S. Ct. 3194, 82 L.Ed.2d 393 (1984)). Although prison officials have a duty to protect prisoners from assault by other prisoners, the Supreme Court has recognized that jail and prison officials cannot be expected to prevent every

assault before it occurs or to stop every assault in progress before injuries are inflicted. Thus, "a prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. That is, the inmate must show both that the risk of harm is sufficiently "serious," an objective inquiry, and that prison officials acted with "deliberate indifference" to inmate health or safety, a subjective inquiry. Id. at 837-38; Helling v. McKinney, 509 U.S. 25, 32, 113 S. Ct. 2475, 125 L.Ed.2d 22 (1993). Thus, "a prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

The Plaintiff's failure to protect claim is based upon the Plaintiff's allegation that Corrections Officer Lowe failed to take any action to intervene and protect the Plaintiff from a "brutal attack" by an unidentified assailant on November 28, 2017. However, the complaint fails to allege that Lowe had prior knowledge that the Plaintiff was at a substantial risk of serious harm or that Lowe acted with deliberate indifference to any such risk. Id. at 837-38 (the inmate must show both that the risk of harm is sufficiently "serious" and that the prison officials acted with "deliberate indifference" to inmate health or safety).

While the exact contours of what action is constitutionally required of a guard who witnesses an on-going fight among inmates is not clearly defined, the Sixth Circuit has held that prison guards have no constitutional duty to intervene in an armed assault by an inmate when the intervention would place the guard in danger of physical harm. Patmon v. Parker, 3 Fed. Appx. 337, 338 (6th Cir. 2001). However, constitutional liability can be based upon facts showing that an officer failed to

take preventative steps when witnessing an inmate fight. See Walker v. Norris, 917 F.2d 1449 (6th Cir. 1990). In affirming the jury's verdict in Walker that defendant prison guards Ritz and Jordan violated the prisoner-plaintiff's Eighth Amendment rights by failing to prevent another inmate, Eggleston, from killing the plaintiff, the Sixth Circuit noted that the officers had opportunities to prevent Fails' stabbing death by (1) opening the door to the yard to permit Fails to elude Eggleston; (2) by restraining Eggleston at the door; (3) by shutting the door before Eggleston could follow Fails into the yard; and (4) by intervening when Eggleston attacked Fails in the yard as the guard looked on. Id. As the Court explained:

> The officers' inaction, when viewed in the most favorable light from the plaintiff's perspective, amounted to a callous disregard for Fails' safety despite obvious notice of imminent danger. Such conduct constituted the type of "deliberate indifference" that we have characterized in Roland as "obdurate" or "wanton."

Id. Similarly, in Freeland v. Russell, 2011 WL 901036 (S.D. Ohio Mar. 14, 2011), the court found that "[o]fficials present at the scene of an attack of an inmate by another inmate who do not intervene to act to end the assault may be deliberately indifferent." Id. at *2. The court explained that the determination of whether the officials were deliberately indifferent rested on whether there were facts to justify the failure to act. Id. Based on the allegations of the complaint, the Court finds that the Plaintiff has failed to allege that Lowe acted with deliberate indifference with respect to the attack on the Plaintiff. Therefore, the complaint fails to an Eighth Amendment failure to protect claim against Lowe in his individual capacity, and the claim will be dismissed.

The complaint maintains that Core Civic should be liable for Lowe's alleged failure to protect the Plaintiff and/or failure to intervene in the assault against the Plaintiff. (Doc. No. 6 at 2). Because it performs a traditional state function in operating a state prison, Core Civic acts under the

color of state law. Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir.1996). However, unlike the state, Core Civic is not entitled to Eleventh Amendment immunity and may be liable under § 1983 "if its official policies or customs resulted in injury to the plaintiff." O'Brien v. Mich. Dep't of Corr., 592 Fed. Appx. 338, 341 (6th Cir. 2014); see also Mason v. Doe, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right").

To hold Core Civic liable, the Plaintiff cannot rely on the theory of respondeat superior or vicarious liability. Street, 102 F.3d at 818. Liability for failure to protect the Plaintiff attaches only if Core Civic's policies were shown to be the "moving force" behind the Plaintiff's injury. City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989). Here, the complaint does not describe how a Core Civic policy is responsible in full or in part for the Plaintiff's injury. Moreover, an allegation that Core Civic had a duty to hire and train competent staff is insufficient to identify a Core Civic policy and tie that policy to the Plaintiff's injury. See Baxter v. Corizon Health, Inc., No. 1:14-cv-1347-JDT-egb, 2015 WL 5707062, at *5 (W.D. Tenn. Sept. 28, 2016). Therefore, for purposes of the initial screening of the Plaintiff's claims against Core Civic required by the PLRA, the court finds that the complaint fails to state Eighth Amendment failure to protect claims against Core Civic.

## VII. Conclusion

For the reasons explained above, the Plaintiff's motion to amend (Doc. No. 6) will be granted. The Plaintiff's motion for the appointment of counsel (Doc. No. 13), however, will be denied without prejudice to refile. The Court has conducted an initial screening of the amended

complaint as required by the PLRA and finds that the complaint states a colorable First Amendment retaliation claim under 42 U.S.C. § 1983 against Defendant Warden Leibach in his individual capacity. That claim shall proceed to further development. However, the complaint fails to state claims upon which relief can be granted under § 1983 with respect to all other claims against all Defendants. Those claims will be dismissed. The Plaintiff will be permitted to amend his complaint in a timely manner for the purpose of fleshing out his claim of retaliatory physical and sexual abuse.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE